Argued and submitted July 6, 1988, reversed as to award of attorney fees and remanded for reconsideration; otherwise affirmed January 25, 1989

## EXPRESS CREDITCORP,
*Appellant - Cross-Respondent,*

*v.*

## The OREGON BANK,
*Respondent - Cross-Appellant.*

## The OREGON BANK,
*Respondent - Cross-Appellant,*

*v.*

## OLIVER,
*Appellant - Cross-Respondent.*

(A8509-05842; A8508-05003; CA A44455)

767 P2d 493

Gary Roberts and Grebe, Gross, Peek, Osborne, & Dagle, Portland, filed the brief for appellant - cross-respondent Express Creditcorp.

Gary J. Bullock, Portland, argued the cause for appellant - cross-respondent Ernest G. Oliver. With him on the briefs was Wade V. Regier, Portland.

Bennett H. Goldstein, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Klaus J. Kolb, and Stoel, Rives, Boley, Jones & Grey, Portland.

Before Warden, Presiding Judge pro tempore, and Newman and Deits, Judges.

WARDEN, P. J. pro tempore.

**WARDEN, P. J.** pro tempore.

Defendant Oliver (defendant) appeals from a judgment in his favor against plaintiff The Oregon Bank (Bank), assigning as errors the trial court's directing a verdict against him on his punitive damages claim and the inadequacy of the attorney fees awarded him.[1]

On February 21, 1985, Bank extended a $75,000 unsecured personal line of credit to defendant. The commitment letter stated that it would expire on June 30, 1985, and that borrowing under it would require execution of a promissory note or notes. Defendant executed five promissory notes between February 22, 1985, and May 1, 1985, totaling $71,000. Each note was payable on demand and made defendant liable for "reasonable attorney's fees" in an action or appeal. On May 28, Bank demanded payment of all five notes by 5 p.m. on May 30, 1985. It filed this action for the principal sums, plus interest, attorney fees and costs, after defendant failed to pay on May 30.

Defendant's answer alleged that Bank accelerated repayment in bad faith, in retaliation for a complaint filed against it by Express Creditcorp (Express), of which defendant was president. Defendant counterclaimed for breach of the loan agreement, seeking damages for increased interest expense in procuring a substitute loan, lost profits and punitive damages. He also alleged several tort counterclaims, which the court dismissed on Rule 21 motions to strike for failure to state claims. Defendant does not challenge those rulings.

During the trial to a jury, the court granted plaintiff's motion for a directed verdict on defendant's claim for punitive damages on the ground that defendant had made out only a breach of contract claim, for which punitive damages could not be awarded. The jury found that plaintiff had breached the

---

[1] Bank filed a cross-appeal to this judgment, but abandoned its cross-appeal in its brief. Therefore, the judgment is affirmed as to Bank's cross-appeal in A8508-05003. Defendant was the president of Express Creditcorp. It filed an action (A8509-054842) against Bank which was consolidated for trial with Bank's action against defendant. Separate judgments were entered. Express Creditcorp appealed and Bank cross-appealed the judgment in A8509-054842. Before oral argument, the parties informed the court that they had settled the case. Therefore, the appeal and cross-appeal in A8509-054842 are dismissed.

loan agreement and awarded defendant $185 in general damages. The judge awarded defendant $250 attorney fees; he had requested $69,279.

■    In his first assignment of error, defendant argues that punitive damages are recoverable in a contract action, relying principally on *Adams v. Crater Well Drilling, Inc.,* 276 Or 789, 556 P2d 679 (1979), and *Friendship Auto v. Bank of Willamette Valley,* 300 Or 522, 716 P2d 715 (1986). The general rule is that there can be no recovery of punitive damages in an action for breach of contract. *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978); *Weaver v. Austin,* 184 Or 586, 600, 200 P2d 593 (1948). The cases that defendant cites do not support his position, because in each of them the defendant engaged in allegedly tortious conduct outside the terms of the contract. In *Adams* the defendant, without probable cause and with no belief in the existence of a claim, threatened to sue the plaintiff to force him to pay money that the plaintiff did not owe. The trial court concluded that the plaintiff's complaint failed to state a cause of action for fraud but held that the complaint alleged an action for money had and received and allowed the recovery of punitive damages on that claim.[2] The Supreme Court affirmed the award of punitive damages. In *Friendship Auto,* the defendant bank, which had a flooring arrangement to finance the plaintiff's inventory, seized the plaintiff's checking account to offset anticipated losses under the flooring arrangement. The trial court directed a verdict for the plaintiff on its claim for conversion of its checking account but granted the defendant's motion for a judgment notwithstanding the verdict on punitive damages. The Supreme Court reinstated the jury award for punitive damages on the conversion claim. In both cases there was tortious conduct to support the award of the punitive damages. In both cases the conduct established could have been held tortious without any underlying contractual relationship between the parties.

Here, defendant's complaint alleges no conduct by Bank that exceeds the limits of the contract. Bank demanded

---

[2] In *Adams v. Crater Well Drilling, Inc., supra,* 276 Or at 794, the court cited *Ward v. Taggart,* 51 Cal 2d 736, 336 P2d 534 (1959), which states that the recovery in an action for money had and received does not arise from any agreement between the parties but from the wrongful conduct.

repayment of money to which it was entitled under either party's understanding of the contract. The only issue was whether the timing of that otherwise valid demand violated the commitment letter and, thus, breached the contract. The jury found that the terms of the commitment letter were controlling and that Bank had breached the contract. Bank's motivation for calling the notes is irrelevant unless its conduct is actionable on some independent non-contractual basis. The trial court evaluated Bank's motiviation under defendant's tort counterclaims and held that defendant had not made out a tort claim.[3] Defendant has not pleaded a tort by adding duplicative allegations to a breach of contract claim. Because he pleaded no independent claim for which a jury could have awarded punitive damages, we hold that the trial court did not err in directing a verdict on punitive damages.

■ Defendant's second assignment of error charges that the trial court abused its discretion in awarding only $250 as attorney fees.[4] A trial court has broad discretion in awarding reasonable attorney fees. Therefore, we review only to determine if it abused its discretion. *Marlowe v. Der-Hart Associates,* 68 Or App 106, 109, 680 P2d 716 (1984) (quoting *Creditors Protective Assoc. v. Britt,* 58 Or App 230, 235, 648 P2d 414 (1982)). The trial court stated:

"Neither the court nor [plaintiff] seriously question the

---

[3] In his third amended answer defendant counterclaimed for abuse of process and for intentional infliction of emotional distress. Both counterclaims were premised on the same conduct alleged in the breach of contract claim, in which defendant alleged:

"Plaintiff's action in breaching its agreement with defendant and subsequently filing this lawsuit were without justification in that they were unrelated to defendant's financial ability to repay his loans. They were deliberately designed to harass and punish defendant, thereby forcing him, as an officer of Express Creditcorp, Inc., into a compromise of another legal action which Express Creditcorp had filed against Oregon Bank. Plaintiff's retaliatory actions were wanton, willful, and outrageous * * *. Plaintiff's bad faith actions were tortious in nature and constitute a grievous violation of important societal interests and are the sort of acts that punitive damages would be likely to deter."

The abuse of process counterclaim went to the allegedly unjustified filing of this action. The counterclaim for intentional infliction of emotional distress was also based on the filing of this action but focused on the wrongful motives, retaliation and harassment, that defendant ascribes to Bank. The court dismissed both counterclaims for failure to state claims, and defendant does not challenge those rulings.

[4] The demand notes included a provision making defendant liable for reasonable attorney fees in an action or appeal. Under ORS 20.096(1), that provision entitles the prevailing party, whether specified in the contract or not, to recover reasonable attorney fees in addition to costs and disbursements.

time expended by [defendant's] attorneys in this litigation nor the reasonableness of the hourly rates set forth in [defendant's] counsel's affidavit. This was a complex case consuming three weeks of trial. It was skillfully and vigorously tried by both sides and the monetary stakes were high. The difficulty in assessing fees is segregating those fees attributable to the claim upon which [defendant] prevailed from [defendant's] other claims and measuring the reasonableness of the fees in light of the result achieved."[5]

Defendant successfully defended against plaintiff's claim for interest, attorney fees and costs after tendering into court the principal and interest due. He also prevailed on his counterclaim for breach of contract and recovered $185 in damages. The notes entitle him to recover "reasonable" attorney fees. The court found that the hours billed and the rates charged are reasonable. We hold that, under these circumstances, an award of only $250 is not reasonable as a matter of law and constitutes an abuse of discretion.

Appeal and cross-appeal in A8508-05842 dismissed; in A8508-05003, reversed as to award of attorney fees and remanded for reconsideration; otherwise affirmed.

---

[5] The court's memorandum opinion on attorney fees covered both consolidated cases but was addressed primarily to the Express Creditcorp case. The court does state, however, that "the reasons mitigating [sic] against a substantial attorney fee award in the Express Credit[corp] case are even more applicable to the Oliver case."